# In the Court of Common Pleas of Schuylkill County.

## SCHRADER *v.* BURR.

The Act of April 9, 1872, "for the better protection of the wages of mechanics, miners, laborers and others," does not give a lien for wages earned after the particular property has been seized by the sheriff on an execution. Property levied is in the custody of the law, and when sold the proceeds are preserved against lien creditors subsequent to the levy.

When a mechanic's lien which is defective has been filed, and the property against which it is entered is sold by the sheriff before the expiration of the six months allowed by law for filing the lien of a mechanic, the claim may be made upon the fund with the same effect that it could be made, if a lien sufficient in form and substance had been entered of record before the sale.

In the matter of the exceptions to the report of D. E. Nice Auditor.

Opinion delivered Dec. 7, 1874, by

PERSHING, J. An Act of Assembly was passed on the 9th day of April, 1872, "for the better protection of the wages of mechanics, miners, laborers and others," (P. L. 47). The first section provides, *inter alia*, that all moneys due for labor and services rendered, by any miner, mechanic, laborer or clerk from any person or persons, or chartered company, either as owners, lessees, contractors or under owners of any works, mines, manufactory or other business where clerks, miners or mechanics are employed for any period not exceeding six months immediately preceeding the sale and transfer of such works, mines, manufactories or business, or other property connected therewith in carrying on said business, by execution or otherwise, preceeding the death or insolvency of such employer or employers, shall be a lien on said mine, manufactory, business or other property, to the extent of the interest of said owners or contractors as the case may be, in said property, and shall be preferred and first paid out of the proceeds of the sale of such mine, manufactory, business or other property as aforesaid ; such preferred claim not to exceed two hundred dollars.

The fund in Court for distribution arises from the Sheriff's sale of the personal property of F. A. Burr, consisting of the Standard printing establishment. On the 6th of April, 1874, a rule was granted by the Court to show cause why the writ of *fi. fa.* should not be set aside, which rule, after argument was discharged. Following this were two sales of the property : The purchaser at the first sale having failed to comply with his bid, the second sale was made on the 18th day of July, 1874.

It appears that after the sheriff made his levy the publication of the Daily and Weekly Standard was continued for sometime by F. A. Burr, the defendant in the execution. The claims for wages presented to the auditor were made on the part of those employed on these newspapers between the date of the levy and the day of the sale. The labor was performed within the six months immediately preceeding the sale of the

property, and it is claimed that the wages thus earned are preferred liens within the very language of the Act of April 9, 1872. This construction, it was argued, is strengthened by a comparison of this Act with that passed on the 11th of April, 1862, for the protection of the wages of labor in the counties of Schuylkill, Bedford and Blair. This latter Act, sec. 5, is made to apply to "wages of labor done and performed within six months immediately preceeding the assignment, death or levy by execution, mentioned therein." It will be observed that in the Act of 1862, the six months within which the wages of labor are prefered, in a case such as the one before us, are reckoned from the date of the levy; in the Act of 1872, the date of the sale is the point of time from which the six months are to run. Was it in the contemplation of the legislature in passing the Act of 1872, to allow liens to accumulate against personal property after it had been levied upon, with the result, in many instances, of sweeping away the proceeds of a sale from vigilant and meritorious execution creditors? It is a familiar rule of construction, that the real intention will always prevail over the literal sense of terms, especially when adherence to literal terms would lead to palpable injustice, contradiction and absurdity. There is no evidence that Mr. Schrader agreed to, or was in any way a party, to the use of the printing establishment by Mr. Burr, after it had been seized by the sheriff. If the broad construction claimed for the Act of 1872 is the true one, it is plain that an execution creditor upon whose writ a levy has been made of property abundantly sufficient to satisfy his judgment, may yet realize nothing, in consequence of the inter-position of liens created after the property was in the custody of the law. Without reference to the words "by execution or otherwise preceding the death or insolvency of such employer or employers," we think the preference given to the wages of labor under the Act of 1872, cannot be extended to a time subsequent to the date of the levy. This construction, it seems to us, is alike consonant with reason and authority. The return of the Sheriff established beyond controversy that he had seized the property and taken it into his own possession. A sheriff's levy necessarily disturbs the possession of the owner of the goods levied upon. It is a seizure. It cannot be made in Pennsylvania without having the goods levied upon, in actual manucapture or control. It vests the possession so fully in the sheriff, that he may maintain trespass for any disturbance of it; and of course it divests the possession of the owner. Even the owner himself may become a trespasser against the sheriff, by removing the goods from his control: Welsh v. Bell, 8 Casey 15. The very point before us has been disposed of in a few sentences in the case of Glass v. Gilbert, 8 P. F. S. Chief Justice Agnew says: (Page 288.) "Property levied, is in the custody of the law, the end of which might be defeated if creditors could subsequently acquire a paramount interest

in it. It was therefore held that a treasurer's warrant to the sheriff to sell the lands of a delinquent collector of taxes, created a lien by seizure, which not only justified the sale, but preserved the proceeds of sale against lien creditors subsequent to the levy."

We think the auditor committed no error in excluding claims for labor, which was performed subsequent to the time of the levy by the sheriff, from participation in the fund for distribution.

Another controverted question involved in the report of the auditor grows out of a mechanic's lien filed by Pott & Vastine against F. A. Burr. When the hearing was had before the auditor, a rule was pending in Court to show cause why this lien should not be stricken from the lien docket. This application was based on the decision of the Supreme Court in the case of St. Clair Coal Co. v. Martz, 2 Legal Chronicle 89. The auditor has made his report in the alternative, one distribution including this mechanics lien, the other excluding it. It is too plain to admit of argument that the decision in St. Clair Coal Co. v. Martz, is fatal to the lien as filed It does not necessarily follow that Pott & Vastine cannot come in upon the fund. On the day of the sale they gave written notice of the amount they claimed as a lien on the press, engine, boiler and gearing, thus limiting it so as to avoid the legal objections to the lien as filed. Independent of their filing any paper, the statute gave a lien which had not expired when the Sheriff's sale was made. If the claim filed be defective, the filing of it does not exhaust or affect the lien, which exists independently of it, till the six months have expired. A second, third, or fourth claim may be filed, and no prior one can be pleaded against the last. The means given to mechanics and material men, are not exhausted by an abortive attempt to pursue the directions of the statute, by filing the claim within six months. This is but the mode of giving it fruitful effect; and should it fail from some technical or even substantial defect, the lien is no more destroyed, than would be a bond, sued out by an improper or inappropriate writ. The claim still remains, and so does the lien, until barred by the lapse of six months after the work is finished or materials furnished. To hold otherwise might be attended not only by inconvenience, but gross injustice—a hazzard which no analogy in the law calls upon us to encounter, and against which we are admonished by the frequent failures of these recorded claims upon merely formal grounds, or because of the want of the due observance of the statutory requisitions. Bournonville v. Goodall 10 Barr, 133, Chambers v. Yarnall, 3 H. 256. Where the property is sold at Sheriff's sale before the expiration of the time allowed by law for filing the lien, the claim may then be made upon the fund, with the same effect as it could be made against the building if the claim had been entered of record before its sale: Yearsley v. Flanigan, 10. H. 489.

This disposes of the only objection made to the payment of this lien, in the proceedings before the auditor.

T. P. Trayer, Esq., the assignee in bankruptcy of F. A. Burr, excepts, because the auditor refused to charge Mr. Schrader with the difference between his bid at the first sale, and the amount at which the property was knocked down to him at the second sale. The legal liability of Mr. Schrader must be ascertained by a different proceeding, and we think the auditor very properly refused to entertain the proposition.

That distribution made by the auditor which includes the payment of the mechanics lien of Pott & Vastine, is confirmed, and all exceptions in conflict with this decision are hereby overruled.